### John Phillip POTTS, Appellant,

v.

### Charles C. VADNAIS, Jr., Administrator of the Estate of Charles C. Vadnais, deceased, Respondent.

No. 49113.

Supreme Court of Missouri,

Division No. 2.

Dec. 11, 1962.

Stephen J. Millett, Kingston, Joe H. Miller, Carrollton, for appellant.

David Thomas, Dudley Thomas, Carrollton, Don Chapman, Sr., Chapman & Chapman, Chillicothe, for respondent.

EAGER, Presiding Judge.

This appeal again raises a question of the effect of our Probate "non-claim" statutes; more specifically, the effect of § 473.360,[1] as originally enacted and as revised in 1959, upon failure of plaintiff to file notice in the probate court of the pendency of a suit against an executor or administrator. We had thought that all suits controlled by the former act had been disposed of. The statutory history is well reviewed in State ex rel. Whitaker v. Hall, Banc, Mo., 358 S.W.2d 845, and other cases, and we shall not quote the pertinent statutes here.

In this case Charles C. Vadnais died on July 22, 1958, presumably as the result of an automobile collision which occurred on July 19; on the 25th of July letters of administration were issued to his son, Charles C. Vadnais, Jr., by the Probate Court of Livingston County. The first publication of notice of letters was made on July 31, 1958. This was not a non-asset estate; the balance in personal property, after the payment of claims, was $4,767.83. This suit was filed against the Administrator on September 11, 1958, in Livingston County. A more or less formal motion to dismiss was overruled and answer filed; thereafter, a change of venue was granted to Carroll County. In a first amended answer filed on June 9, 1959, defendant raised the failure of plaintiff to file the proper notice under the non-claim statutes. Thereafter, an amended petition (alleging additional negligence) was filed, followed by a motion to dismiss; that motion renewed the objection that the action was barred because of plaintiff's failure to file in the probate court within the nine-months' period any notice of the suit or copies of the process and return. Plaintiff's counsel filed a "counter-affidavit," asserting that he had filed both a notice and the requisite copies. The court heard considerable evidence in support of and in contravention of the motion. The Clerk of the Probate Court of Livingston County produced her minute book or index (marked and received as an exhibit), the complete court file folder and filed papers in the Vadnais estate, the order approving the final settlement and discharging the administrator, and the decree of heirship and distribution. The clerk, who had been such since 1947, explained her methods of filing, indexing and recording, and further testified: that she had checked the complete record and the files in this estate, had found no such notice or copies, and that she found nothing to indicate that any such papers had ever been filed; she finally stated that "Definitely it was never filed," and that all the papers

---

[1] All statutory references are to RSMo and V.A.M.S.

filed in the estate were in the folder. On cross-examination she thought she had seen plaintiff's counsel in her office on some business or record search, and she denied receiving from him any such paper as the copy of a notice, process, etc., exhibited to her on the stand; she stated that abstractors and the interested attorneys frequently checked the files out on receipt; she did not recall any such notice of suit being filed in any estate. Stephen J. Millett, plaintiff's counsel, testified: that he was in the Circuit Court at Chillicothe on October 20, 1958, on motions in this case; that when he concluded there, he went to the probate court and handed to the clerk a notice of the pendency of the present suit, along with copies of the summons and return; also, that he had since examined the clerk's minute book for the period from July 3, 1953, to March 31, 1960, and had found no entry concerning any such notice in any estate. Portions of Mr. Millett's testimony were received over the objection that it was thus sought to impeach the probate records. Counsel also offered, as Plaintiff's Exhibit 1, a copy of the notice and other papers supposedly so filed; the ruling upon the objections to this exhibit was reserved. Upon application of plaintiff for the hearing of additional evidence, the court heard later the testimony of John Phillip Potts, the present plaintiff, who testified that he had been in the Circuit Court on October 20, 1958, to put up money for security for costs, that he went to the Probate Court with Mr. Millett, that he saw the latter hand "some papers" to the clerk, and that Plaintiff's Exhibit 1 looked like the paper that was filed. The Circuit Court record showed that a cash cost deposit of $100 was made on October 20, 1958.

The court, after taking the matter under advisement, sustained the motion to dismiss and ordered the petition dismissed for failure to perfect the claim in the Probate Court. A motion for new trial was filed and overruled in due course, and this appeal followed. In overruling the motion, the court noted in its order that plaintiff's rights were extinguished under the Laws of 1955, prior to the amendment of 1959.

Boiled down somewhat, plaintiff's points here are: (1) that plaintiff *did* file the notice and copies of summons and return and complied in all respects with the provisions of §§ 473.360 and 473.367, as they existed prior to the 1959 amendment, and that the court improperly excluded the proffered copy; (2) that the motion to dismiss came too late, being filed after the effective date of the 1959 amendment; (3) that the non-claim statutes are procedural acts, affecting the remedy only, and that plaintiff, having filed suit within nine months, had and has a right to proceed under the general law as it existed prior to the enactment of the non-claim statutes; and (4) that procedural statutes such as these, and particularly the 1959 amendment, apply to all actions falling within their terms unless a contrary intention is expressed, and since this action was pending on August 29, 1959, plaintiff should be permitted to proceed even if no notice was filed.

Plaintiff has briefed as a fact issue here the question of the filing of the notice and copies. The contention that the notice was filed is based upon the oral testimony, plus the offer of Exhibit 1 which purported to be a copy of the notice allegedly filed, and with its attached papers. Objections were made at the trial upon the grounds that such evidence constituted an attempt to impeach the record of the Probate Court and constituted a collateral attack. The trial court proceeded to hear the oral testimony, apparently upon the theory that the presumption created by the clerk's testimony and the absence of any entry in the record book was a rebuttable presumption; it reserved a ruling on the exhibit and, so far as we can find, never ruled on it. The latter is immaterial in our view of the case, for if the evidence is to be considered here, we may also consider excluded evidence. Civil Rule 73.01(d), V.A.M.R.

The objections thus made below raised a somewhat unusual question. There was no affirmative record of *non-filing* in the Probate Court, and there could ordinarily be none. The book and the clerk's testimony were of a negative nature, but all this might well be considered as evidence showing the *state* of the record. Were the question properly presented here, we would have considerable doubt of the admissibility of the oral testimony offered by plaintiff, and of the exhibit (which actually stood on the same ground). We would also doubt whether such an attack could be made initially in the Circuit Court, rather than by some form of direct attack in the Probate Court. But defendant has not followed up here the objections made in the trial court, and has not raised the inadmissibility of any of this evidence. In this state of the record we do not exhaust the questions thus suggested, nor rule them.

The decision of the trial court on the factual question should be viewed here in the manner in which we consider a court's action upon the review of a court tried case. That rule is that we review the case upon the law and the evidence as in suits of an equitable nature, giving due regard to the opportunity of the trial court to judge of the credibility of the witnesses, and not setting the judgment aside unless clearly erroneous. Section 510.310; Civil Rule 73.01(d); Ennis v. Korb, Mo., 347 S.W.2d 671, 675. Defendant's counsel are incorrect in stating that where there is substantial evidence supporting the trial court's finding, we must accept it. Where any such statements have been made since the enactment of our Civil Code, they should simply be taken to mean that the evidence is such that the appellate court feels that it must adopt the rule of deference. We are not bound. In this case, where the court has seen and has so carefully and patiently heard the witnesses at length, and has viewed the records, we do not feel that we would be justified in rejecting a finding so obviously based upon its view of the credibility of the witnesses. We accept the finding inherent in the trial court's ruling, that neither a notice of suit nor copies of the process and return were filed in the probate court.

Plaintiff apparently recognizes, as he must, the controlling authority of Clarke v. Organ, Banc, Mo., 329 S.W.2d 670, as applied to suits governed by § 473.360 of the original probate code (Laws 1955, § 139, p. 434). That case also determined authoritatively that the fact that a defendant's pleading, raising the question of a failure to file notice, was filed after the nine-month period had expired, was immaterial. The court there said, in part, loc. cit. 679, referring to the statute: "This language can leave no doubt as to the effectiveness of the provisions here. It makes no exceptions and its provisions are mandatory. In view of the all-pervading terms of these non-claim statutes we hold that they bar a suit for death against the estate of a deceased tort-feasor unless the conditions there imposed are complied with." That case was followed in the recent case of State ex rel. Whitaker v. Hall, Banc, Mo., 358 S.W.2d 845. There the court held, among other things: that despite the Act of 1959 the causes of action were barred, since they had already been extinguished under the provisions of the original § 373.360; that the so-called amendment of 1959 was actually a new act, enacted upon the repeal of the 1955 sections, and that it should not be construed as applicable to "causes of action already barred," there being nothing in the new sections to indicate such an intent. Whitaker, loc. cit. 851.

In Smith v. Maynard, Banc, Mo., 339 S.W.2d 737, the decision in Clarke v. Organ was also re-affirmed, and a contention of defendant's waiver by participating in the case generally before raising the question of a failure of notice, was disallowed. It seems possible that the dissent of two judges in that case may have given rise to some of plaintiff's contentions here, but that can afford him little legal solace.

Plaintiff's counsel rely principally upon the cases of Rabin v. Krogsdale, Mo., 346 S.W.2d 58; Darrah v. Foster, Mo., 355 S.W.2d 24; and Wentz v. Price Candy Co., 352 Mo. 1, 175 S.W.2d 852. We consider first the Wentz case, merely for the principles declared. It involved a Workmen's Compensation claim and is inapplicable upon its facts. There the statutory limitation upon the time of filing claims had been extended from six months to one year *before* the old limitation had fully run upon the claim involved; the claimant had filed within the period of the new and extended limitation. It was held that the filing was within time; however, the court said, loc. cit. 853: "Ordinary statutes of limitation are held to affect the remedy only. The principle is well settled that the period of limitation prescribed by such statutes may be enlarged and become applicable to existing causes of action, but an enlargement of the period of limitation may not revive a cause of action which has been barred under the limitation as it previously existed." The statute was held to be merely procedural. We have no quarrel with the holding there, but fail to see that it aids the present plaintiff.

In Rabin v. Krogsdale, supra, a defendant died while a personal injury action was pending and his executor was substituted. No notice of pendency was filed in the Probate Court within nine months after the first publication, but the 1959 Act became effective *during the nine-month period*. Under that Act, § 473.360(2) RSMo 1959, actions were not *barred* by the failure to file notice, the alternative being that "no recovery may be had * * * out of any assets" of the estate. The court held that these statutes merely affected the remedy, and that the legislature might have extended the time for filing notice as to existing causes of action; it said, loc. cit. 60, 61: "Conversely, since statutes of limitation relate to the remedy only, 'the legislature has the power *to increase the period of time* necessary to constitute limitation, and to make it applicable to existing causes

of action, *provided such change is made before the cause of action is extinguished under the pre-existing statute of limitations.'* Annotation 46 A.L.R. 1101. * * If the legislature may lengthen or shorten the nonclaim period as to pending actions a fortiori it may otherwise alter or change its procedural effect." (Last italics ours.) That opinion did not purport to hold that the 1959 statute was applicable to a cause of action against which the nine-month period had run prior to the effective date of the 1959 Act, namely, August 29, 1959. The Rabin case was extensively discussed and expressly distinguished in Whitaker, supra, at 358 S.W.2d loc. cit. 849–850.

In Darrah v. Foster, Mo., 355 S.W.2d 24, the court relied, in part at least, upon the Rabin case, stating, loc. cit. 29: "In the Rabin case, as in the case at bar, the effective date of the 1959 enactment occurred before the nine-month period had elapsed. This court held that the legislature could regulate the time and manner of bringing and maintaining suits including an existing cause of action and concluded that plaintiff's action was governed by the new statutes." The court in Darrah adhered to the rule that these statutes affected the remedy only, and that the new act might apply to an existing right of action. The court further said, loc. cit. 31: "Under the 1959 act the effect of failing to file the statutory notice in probate court is limited; it is not made an indispensable prerequisite to the maintenance of such an action and becomes important only if the judgment creditor undertakes to file his judgment in probate, have it classified as a claim and paid out of assets in the probate court or out of assets that have been distributed." And the court concluded, loc. cit. 32: "*Within the time permitted for filing the notice in probate court,* the need for doing so was extinguished by the 1959 act." (Italics ours.) We find nothing in the Darrah case which is controlling here.

■ As pointed out long ago in the Wentz case, a remedial statute may be

made applicable "to existing causes of action, but \* \* \* may not revive a cause of action which has been barred under the limitation as it previously existed." This is a fair expression of the retrospective scope of a remedial statute. We may not ignore the effect of § 473.360(2) as enacted in 1955, and as construed in the Clarke, Smith and Whitaker cases, supra. Since we affirm the finding that no notice (or copies of process and return) was filed within nine months, the necessary result is that this right of action was barred before the 1959 Act became effective.

As already indicated, the controlling distinction in the Rabin and Darrah cases lies in the fact that in those cases the 1959 Act became effective *during* the nine-month period, and while the causes of action were still alive. An enlargement of the statute cannot revive a cause of action which is already dead. We regard as immaterial the fact that this case was still pending on the circuit court docket when the 1955 Act became effective; the underlying and essential right of action was barred upon the expiration of nine months following the first publication of notice of letters granted.

Counsel argue that plaintiff, in view of the 1959 Act, should be permitted to proceed under the "general law," since that Act removed the "harsh penalty." This idea of "general law" apparently arises from the dissenting opinion in Smith v. Maynard, Banc, Mo., 339 S.W.2d 737, and from a phrase used (355 S.W.2d loc. cit. 31) in Darrah v. Foster. The dissenting view in Smith did not prevail there, nor is it controlling here. The Darrah case has already been distinguished. This Court, in Banc, has re-affirmed the majority view in the Clarke and Smith cases in the Whitaker case, supra. We hold that the 1959 Act is of no avail to plaintiff since his right of action had already been barred, and there is no point in a further discussion of this additional suggestion.

We mention briefly plaintiff's attempted distinction of the Whitaker case. Counsel say, in substance, that the suits under consideration there had been re-filed long after the nine-month period, after the dismissals of prior suits; that the suit in our case was filed promptly, and that it remained "pending" until dismissed involuntarily. True, the facts showing delay in the Whitaker case were more exaggerated than here; but the essential principles declared there re-affirmed the rulings in Clarke v. Organ and Smith v. Maynard, supra. That case was not decided upon the narrow point that the prior suits had been dismissed and had thus been stricken from the court docket. The Whitaker case is the last word from our Court in Banc, and it confirms the conclusions which we have reached here. Finally, in connection with the same discussion, counsel say that there was at all times a dispute in the present case as to whether the appropriate notice had been filed;—and that the case certainly was a pending case until that question was determined. Surely, if it were eventually determined that the notice had been filed, then the suit was and is a pending suit with all necessary conditions fulfilled. But conversely, if the finding and decision were (as as we have affirmed) that the notice was not filed, then original § 473.360 was at all appropriate times effective upon it, and the bar of that statute was not tolled, because in fact no notice had been filed. The existence of a factual dispute as to the notice, once it has been determined, cannot alter the basic law.

Further discussion would avail nothing. The judgment of dismissal is affirmed.

All of the Judges concur.